UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. ELAINE HALL, <br><br> Plaintiff, <br><br> v. <br><br> THE FLOATING HOSPITAL (INCORPORATED) and SEAN F. GRANAHAN, <br><br> Defendants. | Case No.: 20-CV-2259 <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, by and through her attorneys, Danny Grace, P.C. as and for her Complaint in this action against Defendant The Floating Hospital (the "Company" or "TFH") and Defendant Sean F. Granahan ("Granahan"), alleges upon personal knowledge and upon information and belief as to the matters as follows:

**NATURE OF THE CLAIMS**

1. This is an action for declaratory, injunctive, and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including misclassification, discrimination and retaliation against Plaintiff in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 203 *et seq.* ("FLSA"); the New York State Human Rights Law, New York Executive Law §§ 290 et seq. ("NYSHRL"); the New York State Labor Law, ("NYLL"); and the New York City Human Rights Law, New York Administrative Code §§ 8-101 et seq. ("NYCHRL").

2. Defendants, its subsidiaries and owners, unlawfully and knowingly misclassified Dr. Elaine Hall as an independent contractor to avoid taxable obligations and other employee benefits that Plaintiff should have been entitled to.

3. Defendants, its subsidiaries and owners, unlawfully discriminated against Plaintiff premised on Plaintiff's blindness, a disability under all applicable laws, and retaliated against Plaintiff when she engaged in protected activities.

4. Defendants' conduct was knowing, malicious, willful and wanton and showed a reckless disregard for Plaintiff, which has caused and continues to cause economic and non-economic damages, and severe mental anguish and distress.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA.

6. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

7. This Court is empowered to issue a declaratory judgement pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in the United States District Court of the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because Defendant maintains their offices and facilities and regularly transact businesses in this district and because a substantial part of the events or omissions giving rise to this action occurred in the Eastern District of New York.

## PROCEDURAL REQUIREMENTS

9. Contemporaneous with the filing of this Complaint, Plaintiff forwarded a copy of the Complaint to the Attorney General of the State of the New York in accordance with NYLL § 215(2).

## PARTIES

10. Plaintiff Elaine Hall was employed by Defendants, and among other things, served as a licensed psychologist at Defendants' New York facilities.

11. At all relevant times, Plaintiff was a citizen and resident of the City of New York.

12. At all relevant times, Plaintiff met and meets the definition of an employee and a qualified individual with a disability under the applicable laws.

13. At all relevant times, Plaintiff was an employee of Defendants within the meaning of the related statutes.

14. Defendant "The Floating Hospital, Inc." ("TFH") is a domestic not-for-profit corporation and has offices and facilities in Queens and Brooklyn, New York. Defendant TFH provides health care services to individuals residing in the City of the New York.

15. At all relevant times, Defendant Sean F. Granahan ("Granahan") was and is the President and General Counsel of TFH.

16. At all relevant times, Defendant Granahan was deemed to be Plaintiff's Supervisor and employer of Plaintiff.

17. At all relevant times, Defendants have met the definition of an "employer" under all applicable statutes.

**FACTUAL ALLEGATIONS**

18.     Plaintiff was employed by Defendants pursuant to a certain "Professional Services Agreement" dated July 20, 2012. See **Exhibit A** (hereafter "Agreement"). Plaintiff continuously worked solely for TFH until she received a letter on April 20, 2017, notifying her that her employment would end on May 24, 2017.

**Misclassification under FLSA**

19.     On or about February 23, 2016, TFH extended Plaintiff's employment to January 31, 2018. See **Exhibit B**.

20.     At all relevant times, although Plaintiff performed as an employee of TFH in all facets of her role, and Defendants benefited from Plaintiff's services as an employee of TFH, Defendants unlawfully classified Plaintiff as an independent contractor in order to avoid their tax obligations and deny the employment benefits that Plaintiff should have been entitled.

21.     Defendants provided an email account for Plaintiff, Defendants offered Plaintiff a Psychologist role, which was central to Defendants' operations. Defendants furthermore periodically provided Plaintiff with personalized TFH business cards identifying Plaintiff as a TFH psychologist, and Defendants consistently put Plaintiff's name on the door of any office Plaintiff was assigned to use.

22.     Defendants' business includes providing mental health care, primary health care and dental services and Plaintiff's duties constituted an integral part thereof.

23.     Plaintiff, as a licensed psychologist in the State of New York carried out assessment, diagnosis, treatment and case disposition of Defendant TFH's patients with

mental health disorders. Without Plaintiff's services, Defendant TFH could not function appropriately.

24. Defendants had absolute control over the methods and manners of Plaintiff's employment. Plaintiff was required to complete the patients' documentation within a specified number of days upon Defendants' request. Plaintiff was not allowed to delegate any assignments that were assigned to her by Defendants.

25. Plaintiff was required to participate in training, weekly staff meetings, and periodic interdepartmental meetings. Plaintiff was also required to follow the working hours as scheduled by Defendants and the dress code of Defendant TFH. Plaintiff was required periodically to read the employee handbook of TFH, satisfactorily respond to written tests of its content, and conform to TFH employee policies and procedures described therein applicable to all TFH psychologists.

26. Plaintiff was required to document every patient visit and telephone contact, document treatment plans every 90 days for all admitted patients, and document patient discharges. She was also required to be prepared to verbally report the status of each patient during weekly staff meetings and to her supervisor upon request.

27. Whenever she took leave, left early or came to the office late, Plaintiff was required to gain approval from the Behavioral Health Director and provide sufficient notice to Defendants.

28. Plaintiff received work performance evaluations from her supervisors. She also received verbal and written feedback throughout the course of her employment.

29. Defendants provided all clinical materials, such as art supplies and toys used in child and family therapy. Defendants also provided and maintained the computer equipment containing electronic medical records and related correspondence.

30. Plaintiff was a full-time employee of Defendants and economically relied on Defendants as Defendants were Plaintiff's only income resource during her tenure therewith.

31. Despite the fact that she was an employee of Defendants within all applicable legal standards, during her employment with Defendants, Plaintiff was continuously passed over for salaried positions and was repeatedly told that she could only be employed as an "independent contractor," notwithstanding the fact that the terms and conditions of her employment and the Agreement indicates that Plaintiff was an employee of Defendants.

32. In fact, Plaintiff suffered significant economic damage as a result of her misclassification, including being required to pay large tax liabilities each year instead of having her taxes withheld.

33. By perpetuating this falsehood and by misclassifying Plaintiff's status as a "independent contractor" Plaintiff was also denied various benefits which other employees were entitled to including but not limited to paid time off, vacation, health insurance, employer-governed retirement account and corresponding employer contributions, as well as Social Security contributions.

34. Following the termination of her employment, Defendants took additional steps to willfully harm Plaintiff by opposing her claim for unemployment. In April 2018, after initially receiving a denial of her unemployment benefits due to Defendants' contesting, the New York Unemployment Appeals Board ruled in Plaintiff's favor.

35. In October 2019, the Appellate Division affirmed the decision of the Unemployment Appeals Board, further underpinning the disgraceful tactics used by Defendants.

**Discrimination, Retaliation and Failure to Provide a Reasonable Accommodation**

36. Plaintiff is an individual with "disability" because she is blind, which substantially limits Plaintiff's major life activities.

37. Despite Plaintiff's excellent performance, both before and throughout Plaintiff's employment with TFH, Plaintiff was subjected to discrimination based on her blindness and/or disability in a number of different ways.

38. Among other things, during Plaintiff's job interview with Defendant TFH in January 2012, Defendant improperly questioned Plaintiff about what caused her blindness.

39. Following the initial job offer, TFH sought to withdraw the offer due to its unwillingness to accommodate Plaintiff's disability by allowing a sighted assistant access to protected patient information.

40. Defendants discontinued their efforts to withdraw their offer only because the New York state Commission for the blind, and a Third-Party job developer, advised Defendants that withdrawing the offer premised on Plaintiff's disability would be neither valid nor legal. The six month hiring delay arising from these TFH actions furthermore harmed plaintiff economically Defendant did not withdraw their offer only because the New York State Commission for the Blind.

41. Upon the beginning of Plaintiff's employment, Defendants began to discriminate against Plaintiff. Despite having been hired full-time, Plaintiff was allowed to work only part-time for a number of months, and was assigned to work in a non-preferred location in Brooklyn. Whenever Plaintiff asked to work in the preferred Long Island City, Queens, headquarters location (due to difficulties with access to the Brooklyn location) she was put off with statements which were obvious references to her blindness, such as "LIC is difficult because it gets so busy," despite

Plaintiff's prior experience in a fast-paced clinic environment. Only after three years was Plaintiff was allowed to work full-time in LIC where she excelled.

42. Defendant misclassified Plaintiff as an independent contractor because they could not withdraw their offer after being aware of Plaintiff's disability.

43. Defendants repeatedly avoided extending reasonable accommodations to Plaintiff and instead Plaintiff was required to provide same, including purchasing and maintaining appropriate assistive technology and paying sighted assistants to carry out tasks such as reading, escorting patients within the clinic, and entering data into TFH computers which were inaccessible to plaintiff as a blind psychologist.

44. Defendants failed to provide any reasonable accommodations to Plaintiff and refused to conduct the interactive process as required by related laws.

45. Moreover, the presence of Plaintiff's guide dog was used by Defendants as means to harass Plaintiff, by Defendant Granahan ordering that a vacuum be run in the conference room adjoining Plaintiff's treatment room after meetings Plaintiff attended with her guide dog.

46. Also, after reporting to TFH the existence of workplace health/safety concerns, in the form of recurrent secondhand cigarette smoke entering treatment rooms, Plaintiff was silenced by intimidation via email from Granahan who blamed the odor on Plaintiff's impeccably groomed guide dog, despite other staff and patients having also at times noticed the smoke.

47. On January 24, 2017, Plaintiff had her annual review where Plaintiff's clinical work and its documentation was praised, and Plaintiff was told that her productivity continued to equal or exceed that of her TFH peers.

48. During this review Plaintiff complained of the improper treatment she was being subjected to by raising the issue with the Defendants that her case assignments had been reduced,

8

due to the hiring of a number of sighted psychologists whose caseloads were being filled. Plaintiff was informed that this would be "looked into."

49. In response to Plaintiff's inquiry, on March 23, 2017, Defendant Granahan wrongly accused Plaintiff of incorrect or improper billing for patient care and suspended her.

50. When Plaintiff provided Defendants with a detailed response and explanation, refuting such implications, by way of a letter dated March 23, 2017, Defendants responded that they were turning the matter over to "a set of attorneys", that they were surprised and "disappointed" that Plaintiff had submitted her standard weekly invoice after fulfilling outstanding duties relevant to patient care, and that Plaintiff's suspension was to continue pending the outcome of an investigation.

51. In response to Defendants' letter of March 28, 2017, which was incorrectly dated April 12, 2017, Plaintiff's prior counsel wrote to Defendants asserting claims on Plaintiff's behalf, including violations of a number of discrimination laws. See **Exhibit C.**

52. By letter dated April 20, 2017 in response to Plaintiff's prior counsel's letter dated April 12, 2017, Defendants informed Plaintiff that she would be terminated on May 24, 2017, and that notwithstanding the fact that her employment had been renewed a number of times, including having been extended through January 2018, Defendants were "exercising [their] option not to renew the Professional Services Agreement, dated July 20, 2012." See **Exhibit D.**

53. Plaintiff's employment agreement had already been renewed for the period of February 23, 2016 through January 31, 2018.

54. According to the terms of the Employment Agreement, immediate termination was allowed only upon the occurrence of any of the following events:

> 6.2.1 The suspension, curtailment, or revocation of Provider's Drug Enforcement Administration registration number or his or her license to practice medicine in the

9

State of New York, regardless of the pendency of any appeal of such suspension, curtailment or revocation;

6.2.2 The use by a Physician(s)/Practitioner(s)'s ability to satisfactory perform the Services as provided herein, unless Provider immediately suspends such Physician(s)/Practitioner(s) from providing any services at the Clinic.

55. Despite written requests by Plaintiff's prior counsel, Defendants have refused to pay Plaintiff's invoice for the work-week ending March 17, 2017 of $1,530.00 for services rendered.

## FIRST CAUSE OF ACTION
### (Misclassification in Violation of the FLSA)

56. Plaintiff alleges and incorporates by reference each and every allegation in each of the preceding paragraphs, as if fully set forth herein.

57. Defendants' actions in violation of the FLSA were willful and contumacious.

58. Plaintiff's employment was controlled and directed by Defendants, the services rendered by Plaintiff were and are an integral part of Defendants' business, and Defendants had direct control over the manner of Plaintiff's work.

59. Plaintiff had been working for Defendants for nearly five (5) years and worked more than forty (40) hours per week.

60. The economic realities of Plaintiff and Defendants' relationship are such that Plaintiff was dependent on Defendants for employment.

61. Defendants benefited from Plaintiff's services as an employee, but paid Plaintiff as an independent contractor to avoid their tax obligations and payment of employee benefits under city, state and federal laws.

62. As a direct and proximate result of Defendants' unlawful conduct in violation of the FLSA, Plaintiff has suffered and continues to suffer severe economic damage, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical illness and injury, for which she is entitled to an award of monetary damages, liquidated damages, attorney fees, and other relief.

## SECOND CAUSE OF ACTION
**(Discrimination in Violation of the NYSHRL)**

63. Plaintiff alleges and incorporates by reference each and every allegation in each of the preceding paragraphs, as if fully set forth herein.

64. Plaintiff was and is an individual with disability as defined by NYSHRL.

65. Defendants have discriminated against Plaintiff in violation of the NYSHRL by denying her equal terms and conditions of employment, including, but not limited to, misclassifying Plaintiff as an independent contractor, refusing to provide reasonable accommodations, and terminating her employment.

66. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages.

67. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and

emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical illness and injury, for which she is entitled to an award of monetary damages and other relief.

### THIRD CAUSE OF ACTION
**(Failure to accommodate under the NYSHRL)**

68. Plaintiff alleges and incorporates by reference each and every allegation in each of the preceding paragraphs, as if fully set forth herein.

69. Defendants were obligated to provide Plaintiff with reasonable accommodations pursuant to the NYSHRL.

70. Plaintiff notified Defendants that because of her blindness there were certain tasks that were inaccessible to her.

71. Instead of engaging in an interactive process with Plaintiff to explore reasonable accommodations that would enable Plaintiff to perform such tasks, Defendants repeatedly avoided extending reasonable accommodations to Plaintiff who instead had to purchase and maintain appropriate assistive technology and pay sighted assistants to carry out tasks inaccessible to her at TFH due to her blindness.

72. Additionally, Defendant Granahan falsely blamed odors in the workplace on Plaintiff's guide dog, which Plaintiff required as an accommodation.

73. Accordingly, Plaintiff is entitled to damages in an amount to be determined by the Court, including out of pocket expenses and emotional and punitive damages.

### FOURTH CAUSE OF ACTION
**(Retaliation in Violation of the NYSHRL)**

74. Plaintiff alleges and incorporates by reference each and every allegation in each of the preceding paragraphs, as if fully set forth herein.

75. Defendants retaliated against Plaintiff in violation of the NYSHRL by, *inter alia*, terminating her employment because she engaged in protected activities as defined under the NYSHRL.

76. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages.

77. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical illness and injury, for which she is entitled to an award of monetary damages and other relief.

## FIFTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)

78. Plaintiff alleges and incorporates by reference each and every allegation in each of the preceding paragraphs, as if fully set forth herein.

79. Defendants discriminated against Plaintiff in violation of the NYCHRL by denying her equal terms and conditions of employment, including but not limited to, misclassifying Plaintiff as an independent contractor, failure to provide reasonable accommodations, and terminating her employment all because Plaintiff was an individual with a disability as defined by the NYCHRL.

80. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary

and/or economic damages, including but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages.

81. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical injury, for which she is entitled to an award of monetary damages and other relief.

82. Defendants' unlawful and discriminatory conduct in violation of the NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## SIXTH CAUSE OF ACTION
**(Failure to accommodate under the NYCHRL)**

83. Plaintiff alleges and incorporates by reference each and every allegation in each of the preceding paragraphs, as if fully set forth herein.

84. Defendants were obligated to provide Plaintiff with reasonable accommodations pursuant to the NYCHRL.

85. Plaintiff notified Defendants that because of her blindness there were certain tasks that were inaccessible to her.

86. Instead of engaging in an interactive process with Plaintiff to explore reasonable accommodations that would enable Plaintiff to perform such tasks, Defendants repeatedly avoided extending reasonable accommodations to Plaintiff who instead had to purchase and maintain appropriate assistive technology and pay sighted assistants to carry out tasks inaccessible to her at TFH due to her blindness.

87. Additionally, Defendant Granahan falsely blamed odors in the workplace on Plaintiff's guide dog, which Plaintiff required as an accommodation.

88. Accordingly, Plaintiff is entitled to damages in an amount to be determined by the Court, including out of pocket expenses and emotional and punitive damages.

## SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)

89. Plaintiff alleges and incorporates by reference each and every allegation in each of the preceding paragraphs, as if fully set forth herein.

90. Defendant retaliated against Plaintiff in violation of the NYCHRL by, *inter alia*, terminating her employment because Plaintiff engaged in protected activities as defined by NYCHRL.

91. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages.

92. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYCRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical injury, for which she is entitled to an award of monetary damages and other relief.

93. Defendants' unlawful and retaliatory conduct in violation of the NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## EIGHTH CAUSE OF ACTION
### (Violations of the NYLL)

94. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

95. Defendants failed to pay Plaintiff timely per the terms of the Agreement without cause contrary to the NYLL, which expressly requires all employers to pay their workers on time.

96. As a direct and proximate result of Defendants' unlawful conduct in violation of the NYLL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering for which she is entitled to an award of monetary damages, liquidated damages and other relief.

97. As Defendants' violation is willful, Defendants are subject to punitive damages.

## NINTH CAUSE OF ACTION
### (Breach of Contract- Against TFL)

98. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

99. By letter dated April 20, 2017, and in response to Plaintiff's attorney's claim letter dated April 12, 2017, Defendants informed Plaintiff that her employment had been terminated and that notwithstanding the fact that her employment had been extended through 2018, the Defendants were "exercising its option not to renew the Professional Services Agreement, dated July 20, 2012." (see Exhibit "D" hereto).

100. In fact, Plaintiff's employment agreement had already been renewed for the period of February 23, 2016 through January 31, 2018.

101. Pursuant to the terms of the employment agreement, Plaintiff could only face "Immediate Termination" upon the occurrence of any of the following events:

> 6.2.1   The suspension, curtailment, or revocation of Provider's Drug Enforcement Administration registration number or his or her license to practice medicine in the State of New York, regardless of the pendency of any appeal of such suspension, curtailment or revocation;
>
> 6.2.2   The use by a Physician(s)/Practitioner(s) of any legal or illegal substance, including drugs or alcohol, which impairs such Physician(s)/Practitioner(s)'s ability to satisfactory perform the Services as provided herein, unless Provider immediately suspends such Physician(s)/Practitioner(s) from providing any Services at the Clinic.

102. Since the Plaintiff's termination was not based upon the grounds set forth in Sections 6.2.1 and/or 6.2.2 of the Agreement, the Plaintiff's "immediate termination" by Defendants constitutes a breach of contract and accordingly, Defendant TFH is liable for damages which includes lost income through and including January 31, 2018.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.   A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York, and the City of New York;

B.   An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.   An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory and/or otherwise unlawful conduct, as well as to take such affirmative action, including reinstatement, as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff.

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering and any other physical or mental injuries.

F. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

G. An award of punitive damages, pursuant to the NYSHRL and NYCHRL, in an amount to be determined at trial;

H. An award of liquidated damages, pursuant to the FLSA and NYLL, in an amount to be determined at trial.

I. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

J. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

K. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated:  May 19, 2020
        New York, New York          Respectfully submitted,

                                    **DANNY GRACE, P.C.**

                                    By: _____/s/_____
                                        Daniel Grace, Esq.
                                        222 Broadway 19th Floor
                                        New York, New York 10038
                                        Telephone: (646) 515-2821
                                        Facsimile: (718) 732-2821
                                        Email: danny@dannygracepc.com
                                        *COUNSEL FOR PLAINTIFF*